Richardson, Ch. J.,
delivered tbe opinion of tbe court:
Tbe claimants, at tbe time tbe depredations in tbis case took place, were partners, residing and doing business as sucb in tbe then Territory of Nebraska, in tbe year 1865. Hosford, one of the partners, was a native-born citizen of tbe United States. Gagnon, bis copartner, was an alien by birth, and has never been naturalized under tbe statutes relating to that subject.
In two cases, at tbe present term (Johnson's Case, 29 C. Cls. R., p. 1, and Valk’s Case, 29 C. C1s. R., post), tbe court has held that none but citizens at tbe time of tbe commission of tbe depredation can maintain actions under tbe Indian Depredation Act (March 3, 1891, ch. 538, 1 Supp. Rev. Stat., 2d ed., p. 913), and we refer to tbe printed opinions therein for our views on tbe subject.
It is argued for tbe claimants that Gagnon, although not formally naturalized, became a citizen by having been a resident and a voter in tbe Territory when Nebraska was admitted into tbe Union as a State, and that sucb citizenship related back to tbe time when these depredations were committed. In support of that proposition tbe decision ef tbe Supreme Court in Boyd v. Thayer (143 U. S., 135) is relied upon. In that case it was held that Boyd “was made a citizen of tbe United States and of tbe State of Nebraska under tbe organic and *44 enabling acts and the act of admission” into the Union. The enabling act was passed April 19, 1864 (13 Stat. L., 47 Ch., 57), and the State of Nebraska was admitted into the Union by the act of February 9,1867. (14 Stat. L., 391.) It was not until the passage of the latter act that Boyd became a citizen of the United States. Nor did the coclaimant in this case, Gagnon, become such citizen till that time (1867), which was after these depredations were committed.
The defendants^ counsel contends that the interests of the two partners are so intermingled that a judgment can not be rendered for one without the other, and he cites the common-law doctrine that in suits upon causes of action accruing to a partnership all the partners must join. As a general rule this is undoubtedly true.
To this the claimants’ counsel replies, that this court and the Supreme Court have repeatedly held that the Court of Claims is not bound by the technical rules of pleading of the common law. (Burns’s Case, 12 Wall., 246, 253; Clark's Case 95 U. S., 539, 543: Baird's Case (in Supreme Court), 8 C. Cls. R., 13, 16; Behan’s Case, 110 U. S., 338, 347; Pierce’s Case, 1 C. Cls. R., 196; Burke’s Case, 13, id., 231, 238; Thomas’s Case, 15 id., 335, 342; Morse Arms Co., 16 id., 296, 301; Brown’s Case, 17 id., 303, 310; Little’s Case, 19 id., 323, 330; Henry’s Case, 22 id., 75, 77).
■ On the other hand, the Supreme Court has held that this court must be guided by the rules of evidence of the common law as to comparison of handwriting. In Moore’s Case (91 U. S., 270, 273) Mr. Justice Bradley, speaking for the court, said:
“ The question is, by what law is the Court of Claims to be governed in this respect? May it adopt its own rules of evidence, or is it to be governed by some system of law? In our opinion it must be governed by law. and we know of no system of law by which it should be governed other than the common law — that is, the system from which our judicial ideas and legal definitions are derived. The language of the Constitution and of many acts of Congress could not be understood without reference to the common law. .The great majority of contracts and transactions which come before the Court, of Claims for adj udication are permeated and are to be adj udge d by the principles of the common law. Oases involving the principles of the civil law are the exceptions. We think that where Congress has not provided and no special reason demands, a dif *45 ferent rule, tbe rules of evidence as found in the common law ought to govern the action of the Court of Claims.”
This language applies equally as well to other rules of the common law; and we have uniformly held in the trial of cases that as a general thing the court is bound by the rules and principles of that law.
There is something more involved in the question in this case than the mere forms of pleading. It is the respective rights of the parties to the property destroyed and the amounts of their several claims — the very substance of the action — that is in doubt. The property belonged to the partnership. Partners do not have a separate and distinct interest in the specific property, in whole or in part; they each own an intermingled interest, which permeates the whole and is subject to the equities of the associates between themselves. (Story on Partnership, §§ 89, 92,241.) The separate share of each can only be determined when the equities as to contribution of capital by the different partners is adjusted. If the parties do not agree, tlieir respective rights must be settled in equity.
In Burns’s case, before cited, the facts were these: Burns and Sibley, both Army officers, had a joint contract with the United States for the manufacture of tents, invented and patented by Sibley. On the. breaking out of the rebellion Sibley joined the Confederates and became an alien enemy. Burns brought suit in his own name for one-lialf the amount due under the contract. The Court of Claims Amendment Act of March 3, 1863 (ch. 92, sec. 12, 12 Stat. L., 765, 767), contained the following :
“ Provided, however, That in order to authorize the said court to render judgment in favor of any claimant, if a citizen of the United States, it shall be set forth in the petition that the claimant, and the original and every prior owner thereof where the claim has been assigned, has at all times borne true allegiance to the Government of the United States, and, whether a citizen or not,, that he has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said Government, which allegations may be traversed by the Government, and if on the trial such issue shall be decided against the claimant his petition shall be dismissed.” (Now Rev. Stat., §§ 1072, 1073.)
Sibley, who was the original contractor, had assigned, to said Burns one-half interest in all the benefits and net profits *46 arising from and belonging to tbe invention ” to which the contract related. This assignment had been recognized by the War Department and Burns had received several payments of one half the amount then due. The Supreme Court say:
“ The War Department recognized this half interest of Burns, and, until the order of the Secretary in December, 1861, paid a moiety of the royalty to him. It thus severed his claim under the contract from that of Sibley.
“But independent of this fact the rights of Burns in the contract and compensation stipulated could not be forfeited nor impared by the disloyalty of his associate. He was true in his allegiance to the Government and served in the Army of the Union. His claim could, therefore, be presented and considered in the Court of Claims by the Act of March 3, 1863. His associate, Sibley, is at the same time barred by that act of any action there, either joint or several, by reason of his disloyalty. The act does thus, in fact, sever their claims, allowing the claim of one to be prosecuted and barring that of the other. The technical rule of pleading in an action in a common law court by which a contract with two must be prosecuted in their joint names, if both are living, has no application to a case thus situated. And the Court of Claims, in deciding upon the rights of claimants, is not bound by any special rules of pleading.”
All the other cases in this court and in the Supreme Court above cited relate merely to the forms and not to the substance of the pleadings; but this case of Burns expressly decides that the act of Congress which prohibited the Court of Claims from giving judgment in favor of a disloyal person severed the claim of the loyal partner from that of his disloyal partner, and that the former alone was entitled to maintain an action for his share, which was previously settled between the partners and recognized by the War Department to be one-half.
The primary liability springs from acts committed by the Indians, and if they can be considered as governed by rules analogous to those, of international law, then, as against the Indian defendants, the United States would have a claim in behalf of their own citizen. The Government certainly has a right to present against a foreign power or against these Indian defendants a claim for the injuries of a citizen, and such a claim can not be defeated by the technical objection that his interest in the property destroyed was not entire. Whatever interest the claimant had in the property he is 'entitled to recover for against the Indian defendants. Such was the *47 decision of tbe Court of Commissioners of Alabama Claims in a similar case.
It would be manifestly unjust and, in our opinion, contrary to tbe intention of Congress to deprive tbe citizen-claimant of tbe rigiit to recover compensation for his losses on tbe sole ground that be bad tbe innocent misfortune to be in partnership with an alien when such a partnership was proper, legitimate, and lawful.
Congress, by giving a right of action under tbe Indian Depredation Act to citizens only, severed tbe interests of tbe citizen from that of bis alien partner; and tbe claimant, Hosford, can recover bis share, whatever it may be. As no doubt that may be proved by tbe partners, who are both living, a new trial will be granted to enable the fact of tbe respective shares in tbe partnership property to be established and tbe petition to be amended as may be deemed best by tbe claimants.